UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TINA BASMAJIAN and DAVID BASMAJIAN,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES; and DOES 1 to 100<br><br>Defendants. | No. 1:23-cv-00063-TLN-AC<br><br><br>**ORDER** |

This matter is before the Court on Defendant United States'[1] ("Defendant") Motion for Summary Judgment. (ECF No. 14.) Plaintiffs Tina Basmajian ("Mrs. Basmajian") and David Basmajian ("Mr. Basmajian") (collectively, "Plaintiffs") filed an opposition.[2] (ECF No. 19.) Defendant filed a reply. (ECF No. 21.) For the reasons set forth below, the Court GRANTS in

---

[1] On July 28, 2023, Defendant filed a Notice of Substitution of Parties, substituting the United States as defendant in place of Edward Cohen, M.D., Michelle Solone M.D., and the Veterans Administration. (ECF No. 13).

[2] Plaintiffs untimely filed their opposition. *See* E.D. Cal. L.R. 230(c) ("Opposition, if any, to the granting of the motion shall be in writing and shall be filed and served no later than fourteen (14) days after the motion was filed."). However, the Court, in its discretion, will consider the filing.

1

part and DENIES in part Defendant's motion.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**[3]

From 2008 until approximately 2022, Mrs. Basmajian received medical care from the United States Department of Veterans Affairs (the "VA") in Palo Alto, California. (ECF No. 21-1 at 1.) Mrs. Basmajian has a BRCA1 gene mutation and as a result is at a higher risk of developing certain types of cancers. (ECF No. 1 at 4.) From 2008 to 2017, Dr. Edward Cohen, M.D. ("Dr. Cohen") treated and performed regular pap smears on Mrs. Basmajian to screen her for cancer and other diseases. (*Id.*) In February 2017, Mrs. Basmajian was informed Dr. Cohen had retired and she would be assigned another VA doctor. (*Id.*) She was eventually assigned to Dr. Michelle Solone, M.D. ("Dr. Solone"), after over a year of trying to secure care from a VA doctor. (*Id.* at 5.) Mrs. Basmajian had her first appointment with Dr. Solone on October 4, 2018. (*Id.*) On December 5, 2018, Mrs. Basmajian had her annual pap smear and received her results on December 21, 2018. (*Id.*) The results from this pap smear indicated Mrs. Basmajian was HPV positive. (*Id.*) Dr. Solone then recommended Mrs. Basmajian undergo a colposcopy[4], which was scheduled for February 15, 2019. (*Id.* at 2.) After receiving concerning colposcopy results, Mrs. Basmajian underwent an LEEP invasive biopsy on March 12, 2019. (*Id.*) The biopsy results indicated Mrs. Basmajian had cervical cancer. (*Id.*) To treat her cancer, Mrs. Basmajian received a total hysterectomy and lymph node dissection on May 7, 2019. (ECF No. 1 at 6.) Mrs. Basmajian experienced complications from her total hysterectomy and as a result underwent four additional follow-up surgeries, including two mesh repairs, a drain replacement, and an infected drain surgery. (*Id.*)

///

///

---

[3]   The following facts are undisputed unless otherwise indicated.

[4]   "Colposcopy (kol-POS-kuh-pee) is a procedure to closely examine your cervix, vagina and vulva for signs of disease." https://www.mayoclinic.org/tests-procedures/colposcopy/about/pac-20385036 (last visited Oct. 18, 2023).

1   On March 25, 2020, Mrs. Basmajian received a letter, dated March 23, 2020 ("March 23 Letter"), written by Dr. Lawrence Leung, M.D.[5]  (ECF No. 21-1 at 3.)  The letter stated a peer review committee determined Mrs. Basmajian's cancer diagnosis could have been made three months to a year sooner if the colposcopy procedure had been performed in October of 2017 or 2018. (*Id.*)  The March 23 Letter informed Mrs. Basmajian of her right to file a Federal Tort Claims Act ("FTCA") claim against the VA and her doctors.  (ECF No. 21-1 at 4.)  Mrs. Basmajian decided to file an FTCA claim, and Plaintiffs allege Mrs. Basmajian then sent her FTCA claim to the VA using Standard Form 95 ("SF 95") on March 15, 2022.  (*Id.*)

The VA contends it received Mrs. Basmajian's administrative claim on April 7, 2022.[6] (*Id.* at 2.)  On July 22, 2022, the VA denied Mrs. Basmajian's claim.  (*Id.* at 4.)  On January 13, 2023, Plaintiffs filed the operative Complaint, alleging two causes of action: (1) Mrs. Basmajian's claim for medical malpractice and professional negligence; and (2) Mr. Basmajian's claim for loss of consortium.  (ECF No. 1 at 7, 9.)  On July 28, 2023, Defendant filed the instant motion for summary judgment.  (ECF No. 14.)

**II.   STANDARD OF LAW**

Summary judgment is appropriate when the moving party demonstrates no genuine issue of any material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance

---

[5]   Dr. Leung is the Chief of Staff for the Department of Veterans Affairs, Palo Alto Health Care System.  He is not a party to this action.  (ECF No. 19-2 at 4.)

[6]   Plaintiffs disagree and argue they sent their claim on March 15, 2022, via Federal Express next day service, and therefore it should have been received on March 16, 2020. (ECF No. 19-1 at 1.)

3

1  solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id*. at
2  324 (internal quotation marks omitted).  Indeed, summary judgment should be entered against a
3  party who does not make a showing sufficient to establish the existence of an element essential to
4  that party's case, and on which that party will bear the burden of proof at trial.

5  If the moving party meets its initial responsibility, the burden then shifts to the opposing
6  party to establish that a genuine issue as to any material fact does exist. *Matsushita Elec. Indus.*
7  *Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv.*
8  *Co.*, 391 U.S. 253, 288–89 (1968).  In attempting to establish the existence of this factual dispute,
9  the opposing party may not rely upon the denials of its pleadings but is required to tender
10 evidence of specific facts in the form of affidavits, and/or admissible discovery material, in
11 support of its contention that the dispute exists.  Fed. R. Civ. P. 56(c).  The opposing party must
12 demonstrate that the fact in contention is material, *i.e.*, a fact that might affect the outcome of the
13 suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that
14 the dispute is genuine, *i.e.*, the evidence is such that a reasonable jury could return a verdict for
15 the nonmoving party. *Id*. at 251–52.

16 In the endeavor to establish the existence of a factual dispute, the opposing party need not
17 establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual
18 dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
19 trial." *First Nat'l Bank of Ariz.*, 391 U.S. at 288–89.  Thus, the "purpose of summary judgment is
20 to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for
21 trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's
22 note on 1963 amendments).

23 In resolving the summary judgment motion, the court examines the pleadings, depositions,
24 answers to interrogatories, and admissions on file, together with any applicable affidavits.  Fed.
25 R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982).  The evidence
26 of the opposing party is to be believed and all reasonable inferences that may be drawn from the
27 facts pleaded before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S.
28 at 255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

1 obligation to produce a factual predicate from which the inference may be drawn. *Richards v.*
2 *Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir.
3 1987). Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party
4 "must do more than simply show that there is some metaphysical doubt as to the material facts."
5 *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. "Where the record taken as a whole could not lead
6 a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id*. at
7 587.

   **III.    ANALYSIS**

9 Defendant moves for summary judgment as to all of Plaintiffs' FTCA claims. (ECF No.
10 14-1 at 3.) Defendant first argues Mr. Basmajian's claim for loss of consortium should be
11 dismissed as a matter of law because he failed to exhaust his administrative remedies before
12 initiating this action. (*Id*. at 6–7.) Defendant also argues summary judgment should be granted as
13 to Mrs. Basmajian's claim because it is time bared. (*Id*. at 5.) The Court will address each of
14 Defendant's arguments in turn.

              A.       Mr. Basmajian's Failure to Exhaust Administrative Remedies

16 Defendant argues Mr. Basmajian is barred from bringing his FTCA claim for loss of
17 consortium because he was not a party to the administrative claim filed by Mrs. Basmajian, nor
18 did he file his own administrative claim before initiating this action. (ECF No. 14-1 at 6.)
19 Plaintiffs do not address Defendant's first argument in their Opposition but concede Mr.
20 Basmajian never filed an administrative claim for loss of consortium. (*See* ECF No. 19-1 at 2.)
21 28 U.S.C. § 2675(a) requires all FTCA claims to be presented in writing to the appropriate
22 federal agency first before the claim can be filed in district court. *See* 28 U.S.C. § 2675(a) ("An
23 action shall not be instituted upon a claim against the United States. . .unless the claimant shall
24 have first presented the claim to the appropriate Federal agency and his claim shall have been
25 finally denied by the agency in writing and sent by certified or registered mail."). Mr. Basmajian
26 was not a party to the administrative claim filed by Mrs. Basmajian, nor did he file an
27 independent claim with the VA. Therefore, Mr. Basmajian did not exhaust his administrative
28 remedies before initiating this action in violation of 28 U.S.C. § 2675(a).

1    Accordingly, the Court GRANTS Defendant's motion for summary judgment as to Mr.
2 Basmajian's FTCA claim for loss of consortium.

### B. Timeliness of Mrs. Basmajian's Claim

Defendant argues the Court should grant summary judgment as to Mrs. Basmajian's remaining FTCA claim for medical malpractice and professional negligence because she did not file her claim with the VA until April 7, 2022, and her claim is thus time-barred. (ECF No. 14-1 at 5.) "Under the FTCA, a tort claim against the United States is barred unless it is presented in writing to the appropriate federal agency 'within two years after such claim accrues.'" *Winter v. United States*, 244 F.3d 1088 (9th Cir. 2001), *as amended on denial of reh'g* (May 25, 2001) (quoting 28 U.S.C. § 2401(b)). Defendant first contends Mrs. Basmajian's claim is time-barred because it accrued on March 29, 2019, when Mrs. Basmajian first learned of her cancer diagnosis, and Mrs. Basmajian thus had till March 29, 2021 to file her claim with the VA. (ECF No. 14-1 at 5.)  Plaintiffs disagree and argue Mrs. Basmajian's claim did not begin to accrue until March 23, 2020, when she received the March 23 Letter informing her that her cancer could have been diagnosed sooner. (ECF No. 19 at 3.)  Defendant argues, though, even if Mrs. Basmajian's claim did not begin to accrue until March 23, 2020, Mrs. Basmajian's claim is still time bared because she did not file her claim with the VA until fifteen days after the statute of limitations ran. (ECF No. 14-1 at 5.)  In opposition, Plaintiffs argue Mrs. Basmajian timely filed her administrative claim within the two-year statute of limitations of when her FTCA claim accrued. (ECF No. 19 at 3.)

### i. Claim Accrual

In an FTCA medical malpractice case, "a claim accrues when the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury and its cause." *Landreth By & Through Ore v. United States*, 850 F.2d 532, 533 (9th Cir. 1988); *see also Winter v. United States*, 244 F.3d 1088, 1090 (9th Cir. 2001) ("It is well settled that the limitations period begins to run when the plaintiff has knowledge of injury and its cause, and not when the plaintiff has knowledge of legal fault.").  Put differently, a cause of action does not begin to accrue until a plaintiff is aware of their injuries and is informed of the probable cause of their injuries. *Winter*,

244 F.3d at 1091.

Defendant argues "[i]t is beyond dispute that [Mrs. Basmajian] discovered her injury i.e. learned of cancer, on March 29, 2019." (ECF No. 14-1 at 5.) Plaintiffs disagree and argue Mrs. Basmajian's injury is not that she had cervical cancer, but rather that she had to undergo a total hysterectomy and four follow up surgeries due to her cancer's advanced stage. (ECF No. 19 at 3; *see also* ECF No. 14-2 at 4 ("Injury due to delayed diagnosis and unnecessary procedure."); *id*. at 6 ("Tina Basmajian received an avoidable total hysterectomy.").) Plaintiffs further argue that "her claim did not accrue until March 23, 2020" because that is when she discovered her cancer could have been diagnosed sooner. (*Id*. ("While it is undisputed that [Mrs. Basmajian] knew she had been diagnosed with cervical cancer in May 2019, [Mrs. Basmajian] did not have any knowledge or any reason to believe that her cancer diagnosis could have been made at a much earlier date ….").)

Defendant disagrees and argues when Mrs. Basmajian received the March 23 Letter is irrelevant because Mrs. Basmajian "knew, or reasonably should have known, all the facts that led her to believe there was a failure of the VA to provide adequate treatment by at least the date of her cancer diagnosis on March 29, 2019." (ECF No. 21 at 3.) And even if Mrs. Basmajian herself did not know her cancer could have been discovered sooner, Defendant cites *United States v. Kubrick* to support its argument that Mrs. Basmajian had a responsibility to "seek advice in the medical community to determine whether the medical treatment conformed to the generally applicable standard of care." (ECF No. 21 at 3 (*citing United States v. Kubrick*, 444 U.S. 111, 123-124 (1979)).)

Defendant's reliance on *Kubrick* is unpersuasive. In *Kubrick*, the Court clarified that a plaintiff's claim begins to accrue when the plaintiff is on clear notice of the cause of his or her injury, not when a plaintiff learns a defendant's actions rise to the level of medical negligence. *Kubrick*, 444 U.S. at 122. *Kubrick's* assertion that plaintiffs' can "protect [themselves] by seeking advice in the medical and legal community" is referring to the responsibility plaintiffs' have, after becoming aware of the injury and its cause, to inquire into whether the defendant's conduct rises to the level of medical negligence. *Id*. There is a difference between "a plaintiff's

7

ignorance of his legal rights and his ignorance of the fact of his injury or its cause." *Id.* Moreover, "[t]hat he has been injured in fact may be unknown or unknowable until the injury manifests itself; and all the facts about causation may be in the control of the putative defendant, unavailable or at least very difficult to obtain." *Id.*

Based on the record before the Court, there is no evidence to indicate Mrs. Basmajian could have discovered that her cervical cancer could have been diagnosed sooner until she received the March 23 Letter. Furthermore, it is undisputed Mrs. Basmajian was undergoing regular testing for cervical cancer prior to her diagnosis, and there is nothing in the record to suggest she was doubtful of the testing plan put in place by the VA. (*See* ECF No. 21-1 at 1.) The law does not expect Mrs. Basmajian, a layperson without medical training, to have been aware her testing plan was deficient before her medical providers were. *Winter*, 244 F.3d at 1091 ("Ordinarily, a plaintiff cannot be expected to discover the general medical cause of his injury even before the doctors themselves are able to do so."); *see also Rosales v. United States*, 824 F.2d 799, 801 (9th Cir. 1987) (holding a baby's parents "did not know, and reasonably should not have known, of the cause of [the baby's] injury" until they were informed by doctors of the probable cause of the injury). Thus, the Court finds Mrs. Basmajian's claim did not begin to accrue until at least March 23, 2020, when the VA informed Mrs. Basmajian of both her injury and the cause of her injury.

        *ii.*  *Claim Filing Date Issue*

Defendant next argues even if the Court finds Mrs. Basmajian's claim did not begin accruing until March 23, 2020, her claim is still time-barred because the VA did not receive Mrs. Basmajian's claim until April 7, 2022, fifteen days after the two-year deadline. (ECF No. 21 at 7.) Plaintiffs disagree and argue Mrs. Basmajian timely filed her administrative claims before the March 23, 2020 deadline because she sent her claim to the VA on March 15, 2022, via Federal Express next day service. (ECF No. 19 at 3.) Defendant makes two arguments in response. (ECF No. 21.) First, Defendant argues that when Mrs. Basmajian mailed her claim to the VA is irrelevant because the "mailbox rule does not apply in FTCA cases." (ECF No. 21 at 7.) Second, Defendant argues that regardless of when Mrs. Basmajian mailed her claim to the VA, the VA did

not receive Mrs. Basmajian's claim until April 7, 2022. (*Id.*)

Defendant is correct in that the "mailbox rule" does not apply in FTCA cases. *See Bailey v. United States*, 642 F.2d 344, 346 (9th Cir. 1981) (declining to hold that "mailing alone is sufficient to meet the requirement that a claim be "presented."); *see also Vacek v. U.S. Postal Serv.*, 447 F.3d 1248, 1253 (9th Cir. 2006) (declining to deviate from *Bailey* maintaining "[V]irtually every circuit to have ruled on the issue has held that the mailbox rule does not apply to Act claims. . . ."). Instead, 28 C.F.R. § 14.2(a) controls, stating, "…a claim shall be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 or other written notification of an incident …."

Plaintiffs argue the VA nonetheless received Mrs. Basmajian's administrative claim before the statute of limitations ran because Mrs. Basmajian mailed her administrative claim to the VA on March 15, 2022, via Federal Express next day service, nine days before the statute of limitations deadline. (ECF No. 19 at 3.) In support of their contention, Plaintiffs present two pieces of evidence. First, Plaintiffs offer an email from the VA hospital in Palo Alto, CA, directing Mrs. Basmajian to mail her FTCA claim to the Department of Veterans Affairs Office of Chief Counsel, Pacific District North, in San Francisco, California. (ECF No. 19-4 at 4–5.) Second, Plaintiffs offer a copy of a postal receipt, which shows Mrs. Basmajian's SF 95 was mailed on March 15, 2022, to the Pacific District North VA office via Federal Express next day service. (*Id.* at 7.) Based upon this evidence, a reasonable juror could conclude the VA received Mrs. Basmajian's administrative claim the next day, on March 16, 2022, eight days before the statute of limitations deadline.

Defendant disagrees and argues the VA did not receive Plaintiff's claim until April 7, 2022, fifteen days after the statute of limitations ran. (ECF No. 21 at 1–2.) In support, Defendant also offers two pieces of evidence. First, Defendant offers a copy of Plaintiff's SF 95 with a stamp that says, "RECEIVED By VA Office of General Counsel Pacific District of Portland Office" and an illegible date. (ECF No. 14-2 at 4.) Second, Defendant offers a declaration from Sara E. Aull, Staff Attorney for the Department of Veterans Affairs Office of General Counsel.

9

1  (*Id.* at 1–2.) Ms. Aull's declaration states that she performed a records search and confirmed the
2  VA received Mrs. Basmajian's claim on April 7, 2022. (*Id.*)

3  The Court finds Defendant's evidence does not resolve a genuine issue of material fact as
4  to when the VA received Mrs. Basmajian's administrative claim. With regards to Defendant's
5  copy of Mrs. Basmajian's administrative claim, the date within the "RECEIVED" stamp is not
6  legible. (*See* ECF No. 14-2 at 4). Thus, outside of Ms. Aull's self-serving declaration, there is no
7  evidence before the Court to corroborate the VA's claim that it did not receive Mrs. Basmajian's
8  claim until April 7, 2022. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir.
9  2002) ("[T]his Court has refused to find a 'genuine issue' where the only evidence presented is
10 'uncorroborated and self-serving' testimony.") (citing cases). Additionally, the Court is puzzled
11 as to why the VA only deemed Mrs. Basmajian's administrative claim as received when it
12 reached the VA's Portland office, even though the VA originally told Plaintiffs to submit Mrs.
13 Basmajian's claim to the VA's office in San Francisco. Moreover, Defendant has not cited to any
14 authority addressing why the VA's San Francisco office should not be considered the
15 "appropriate agency" for Mrs. Basmajian's claim. *See* 28 C.F.R. § 14.2(b)(1) ("A claim shall be
16 presented as required by 28 U.S.C. 2401(b) as of the date it is received by the appropriate
17 agency."). Nor has Defendant offered an explanation as to why Mrs. Basmajian's claim appeared
18 to travel through at least two different offices before the VA deemed her claim to be "received"
19 by the VA. Thus, based upon the evidence before the Court, there is a genuine issue of material
20 fact as to when the VA received Mrs. Basmajian's administrative claim[7].

21 Accordingly, the Court DENIES Defendant's motion for summary judgment based on
22 Mrs. Basmajian's claim being time-barred.
23 ///
24 ////
25 ///
26

27 [7] Plaintiffs also argue the claim is timely under the doctrine of equitable estoppel. (*See* ECF No. 19 at 4.) Since the Court finds there is a genuine issue of fact as to when the claim was
28 received, it need not reach the merits of this argument.

**IV.  CONCLUSION**

For the reasons set forth above, the Court hereby GRANTS in part and DENIES in part Defendant's Motion for Summary Judgment (ECF No. 14) as follows:

1. Defendant's motion is GRANTED as to Mr. Basmajian's claim for loss of consortium; and
2. Defendant's motion is DENIED as to Mrs. Basmajian's claim for medical malpractice and professional negligence.

The parties are ORDERED to file a Joint Status Report within thirty (30) days of the electronic filing date of this Order indicating their readiness to proceed to trial on Mrs. Basmajian's claim and proposing trial dates.

IT IS SO ORDERED.

Date:  December 15, 2023

Troy L. Nunley
United States District Judge

11